Fugate *v.* Cincinnati, New Orleans & Texas Pac. Ry.
Co.

Smith *v.* Same.

(*Knoxville*, September Term, 1944.)

Opinion filed December 2, 1944.

J. Ralph Tedder, of Rockwood, for plaintiff-plaintiff in error.

Whitaker, Hall, Haynes & Allison, of Chattanooga, for defendant-defendant in error.

Mr. Chief Justice Green delivered the opinion of the Court.

The above styled cases were filed by the respective widows of Fugate and Smith to recover damages for the deaths of their late husbands under circumstances which it was averred rendered the defendant Railway Company liable in damages. The two cases were tried together, the declarations being identical. Each suit was dismissed on demurrer and the plaintiffs have brought the cases to this Court.

The declarations averred that the deceased men wishing to go from Evansville, Tennessee, to Kentucky, with the knowledge, consent, or invitation of agents or servants of defendant having charge of a freight train, entered into a compartment of a refrigerator car. That said agents or servants shut the door of the compartment of said car which was loaded with bananas or other fruits and vegetables. That it was impossible for the men to escape from this compartment of the refrigerator car and that when the car reached Danville, Kentucky, on the following day and the compartment was opened both men

were found dead. That there were dangerous, deadly and suffocating fumes in such compartment, which fact was known to the agents or servants of defendant but was not known to the deceased. That the acts of said agents or servants in the premises were negligent, willful and wanton, and that defendant, Railway Company was liable in consequence.

As heretofore stated, the court below dismissed these suits on demurrer and we do not see how he could have done otherwise under the law prevailing in this jurisdiction. This refrigerator car was a part of a freight train, not equipped for the carriage of passengers and upon which, as is well known, passengers are not permitted to ride. It is conceded on the brief of counsel for plaintiffs that the dead men cannot be regarded, under decisions of this Court, as other than trespassers on this train.

 Viewing the cases as based on simple negligence of defendant's employees, there can be no recovery. It is not averred in the declaration nor is it claimed that defendant's employes in charge of this freight train were either expressly or by implication authorized by defendant to extend the invitation to these men to get into the refrigerator car or that this act of the employes was in any sense or degree within the scope of their employment or in furtherance of defendant's business. Under such circumstances there can be no recovery against the master. *Stone Co.* v. *Pugh*, 115 Tenn., 688, 91 S. W., 199, 4 L. R. A. (N. S.), 804, 112 Am. St. Rep., 881; *Deihl* v. *Ottenville*, 82 Tenn., 191; *Cantrell* v. *Colwell*, 40 Tenn., 471, 472; *Puryear* v. *Thompson*, 24 Tenn., 397.

 Nor can there be any recovery if the case be viewed as one of willful and wanton negligence on the part of defendant's employes—if they shut the men up knowing that conditions in the compartment were such, by reason

of fumes or lack of air, that human life could not endure therein.

Cases dealing with the liability of a master for willful and wanton acts of the servant are reviewed by this Court in *Hunt-Berlin Coal Co.* v. *Paton*, 139 Tenn., 611, 202 S. W., 935. The result of our decisions, as stated in that case and set out in *Life & Casualty Ins. Co.* v. *Russell*, 164 Tenn., 586, at page 589, 51 S. W. (2d), 491, at page 492, is as follows: "In *Hunt-Berlin Coal Co.* v. *Paton*, 139 Tenn., 611, 202 S. W., 935, it was held that the willful tort of the servant could be imputed to the master in three classes of cases: (1) Where the master is under contract, expressed or implied, with the person wronged, or under a law-imposed duty, requiring the master to refrain from mistreatment of him; for example, assaults upon passengers by railway employees. (2) Where the nature of the employment or the duty imposed on the servant is such that the master must contemplate the use of force by the servant in performance, as a natural or legitimate sequence; for example, cases involving assault and homicides by special officers in the master's employ. (3) Where a dangerous instrumentality is intrusted by the master to the servant, which has capability of harm to the public, such as a locomotive whistle willfully sounded."

The present cases cannot be brought within any of the foregoing classifications. The master here was under no contract whatever with the dead men. The employment of these trainmen did not contemplate the use of force by them, except perhaps in ejecting trespassers from this freight train. Certainly it was not contemplated that the trainmen would invite trespassers into a freight car and shut the doors. True, as argued, it was part of the trainmen's duty to shut the doors to protect

the contents of the cars but it was no part of their duty to invite trespassers into the cars and to shut them up. Lastly, a refrigerator car cannot be regarded as a dangerous instrumentality.

We find no error in the judgments rendered in the court below and they will be affirmed.